RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN V. CHURCH, ISB # 9391
Lead Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov

*Attorneys for Defendants Idaho State
Board of Education, Idaho Department of
Education, and Attorney General Labrador*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SARAH INAMA, an individual,<br><br>                                    *Plaintiff*,<br><br>             v.<br><br>IDAHO STATE BOARD OF EDUCA-TION, an agency of the State of Idaho; et al.<br><br>                                    *Defendants*. | Case No. 1:26-CV-00064-DCN<br><br>**MEMORANDUM IN SUPPORT OF THE STATE ENTITIES' MOTION TO DISMISS** |

INTRODUCTION

Fifteen years ago, the U.S. Court of Appeals for the Ninth Circuit held that public school officials could prohibit a high school teacher from displaying in his classroom banners that had statements like, "IN GOD WE TRUST," and "All men are created equal, they are endowed by their CREATOR." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011). The Ninth Circuit summed up its reasoning for why such a policy was appropriate:

> When Bradley Johnson, a high school calculus teacher, goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 833, 115 S. Ct. 2510, 132 L.Ed.2d 700 (1995). Just as the Constitution would not protect Johnson were he to decide that he no longer wished to teach math at all, preferring to discuss Shakespeare rather than Newton, it does not permit him to speak as freely at work in his role as a teacher about his views on God, our Nation's history, or God's role in our Nation's history as he might on a sidewalk, in a park, at his dinner table, or in countless other locations.

*Id.* at 957.

Recently, the Idaho Legislature enacted, and the Governor approved, House Bill 41, as Amended in the Senate (2025). 2025 Idaho Sess. Laws 541. That law, which is codified at Idaho Code § 33-143, is in line with *Johnson*. The relevant provision of the statute in clear terms provides that "[n]o flags or banners that represent political, religious, or ideological views, including but not limited to political parties, race, gender, sexual orientation, or political ideologies, may be displayed on public school property such as classrooms, hallways, entryways, or sports fields." Idaho Code § 33-143(2).

Plaintiff Sarah Inama disagrees with the Idaho Legislature's decision to enact Idaho Code § 33-143. She resigned from her middle-school teacher position after her then-employing public school district required her to remove two posters from her classroom. She is now teaching "at a different school in Idaho," has "hung the Posters," and brought this suit.

She sues the Board of Education (Board), the Department of Education (Department), and the Attorney General (in his official capacity). (Collectively, the State Entities.) She targets the Board and Department over the Legislature's enactment of the law. She then targets the Attorney General because he, in the exercise of his own First Amendment rights, penned an Op-Ed, "One state's bold fight against classroom indoctrination targets woke 'welcome' signs." *But cf. Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (public officials don't give up all their First Amendment rights); *Bond v. Floyd,* 385 U.S. 116 (1966). She also targets the Attorney General because—although it is his duty under Idaho Code § 67-1401—he gave legal *advice* to the Department.

Ms. Inama's suit cannot proceed. The federal law claims are barred. The State Entities have sovereign and Eleventh Amendment immunity, and they are not "persons" for purposes of 42 U.S.C. § 1983. And the Attorney General, having no connection to the enforcement of Idaho Code § 33-143, cannot be sued under the *Ex parte Young* exception. The pendent state law claims are also barred because the State Entities have not waived their sovereign and Eleventh Amendment immunity.

## LEGAL STANDARD

The State Entities make this motion to dismiss under Rules 12(b)(1) and 12(b)(6). The State Entities' sovereign and Eleventh Amendment immunity defense is "quasi-jurisdictional" and may be raised via either Rule 12(b)(1) or 12(b)(6). *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

Under Rule 12(b)(1), the Court examines whether it has subject matter jurisdiction. Where, as here, the State Entities make a facial challenge, the Court examines the allegations contained in the complaint to determine if they are insufficient on their face to establish federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (addressing facial versus factual attacks).

Under Rule 12(b)(6), the Court examines whether the complaint states a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up).

## ARGUMENT

Ms. Inama's complaint brings seven causes of action. Six are targeted at some or all of the State Entities:

- Count 1 is brought under 42 U.S.C. § 1983 and state law, asking that the Court declare Idaho Code § 33-143 facially vague under the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 13 of the Idaho Constitution. Count 1 is brought against the Board, the Department, and the Attorney General. Count 1 seeks declaratory and injunctive relief.

- Count 2 is brought under 42 U.S.C. § 1983 and state law, asking that the Court declare Idaho Code § 33-143 facially overbroad under the First Amendment of the U.S. Constitution and the Idaho Constitution. Count 2 is brought against the Board, the Department, and the Attorney General. Count 2 seeks declaratory and injunctive relief.

- Count 3 is brought under 42 U.S.C. § 1983 asking that the Court declare Idaho Code § 33-143 vague as applied under the Fourteenth Amendment of the U.S. Constitution. Count 3 is brought against the Attorney General. Count 3 seeks declaratory and injunctive relief.

- Count 4 is brought under 42 U.S.C. § 1983 and state law, asking that the Court declare Idaho Code § 33-143 overbroad as applied under the First Amendment of the U.S. Constitution and the Idaho Constitution. Count 4 is brought against the Attorney General. Count 4 seeks declaratory and injunctive relief.

- Count 5 is brought under 42 U.S.C. § 1983, asking that the Court declare that the Attorney General violated the First Amendment. Count 5 is brought against the Attorney General. Count 5 seeks declaratory and injunctive relief, and damages.

- Count 6 is brought under 42 U.S.C. § 1983, asking that the Court declare that the West Ada School District and its officials violated the First and Fourteenth Amendment. Count 6 is brought against the West Ada School District, Superintendent Bub, and Principal Hoyte. Count 6 seeks damages.

- Count 7 is brought under state law, asking that the Court declare that Idaho Code § 33-143 violates the Idaho Constitution. Count 7 is brought against all defendants. Count 7 seeks declaratory and injunctive relief.

## I.  All federal law claims should be dismissed.

### A.  The State Entities have sovereign and Eleventh Amendment immunity.

Ms. Inama has sued the Board, the Department, and the Attorney General in his official capacity. But "[t]he Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 967 (9th Cir. 2010) (quoting *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999)). "The Eleventh Amendment jurisdictional bar applies regardless of

the nature of relief sought and extends to state instrumentalities and agencies." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Further, "Eleventh Amendment immunity also shields state officials from official capacity suits." *Id.* (citation omitted).

Each federal law claim is barred by the sovereign and Eleventh Amendment immunity that the State Entities enjoy. They do not waive their immunity, nor consent to this suit. This Court cannot breach that immunity. All federal law claims should be dismissed.

**B.  The *Ex Parte Young* exception does not apply to the Attorney General.**

Ms. Imana might contend that the *Ex parte Young*, 209 U.S. 123 (1908), exception to immunity applies. But the Attorney General has no enforcement authority regarding Idaho Code § 33-143, and so the *Ex parte Young* exception does not apply. The *Ex parte Young* exception to Eleventh Amendment immunity applies when a claim asserts "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). The exception applies to officials with "'some connection with the enforcement' of the challenged act." *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 842 (9th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157). Such requires "that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state laws or general supervisory power over the persons responsible for enforcing the challenged provision." *Id.* (cleaned up).

The Attorney General has no connection whatsoever to Idaho Code § 33-143. That section does not authorize the Attorney General to enforce it; instead it designates the Department to "oversee the enforcement." Idaho Code § 33-143(4). (And the Department,

being the executive arm of a separate constitutional body, is not overseen or controlled by the Attorney General. *See* IDAHO CONST. art. IX, § 5; Idaho Code § 33-125.) Because the Attorney General has no enforcement connection, the *Ex parte Young* exception does not apply, and for the reasons above, the Attorney General has sovereign and Eleventh Amendment immunity. All federal law claims against the Attorney General should be dismissed.

While Ms. Inama pleads that the Attorney General "has the authority to enforce" Idaho Code § 33-143, Dkt. 1 ¶ 4, she provides no citation for such an assertion, and the Court need not accept it. *See, e.g.*, *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) ("However, legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth.") (cleaned up). In fact, the statute disproves her assertion. Subsection 4 of Idaho Code § 33-143 authorizes the Department to enforce the statute.

Ms. Inama also points to the Attorney General's duty to provide legal *advice*. Dkt. 1 ¶ 81; *see generally* Idaho Code § 67-1401. But clients are free to accept (or not) an attorney's advice. Further, it does not change the fact that the Attorney General has *no* role in the enforcement; it is the Department who has the sole authority to enforce the statute. This is not a situation where the Attorney General has concurrent enforcement or several-levels-removed enforcement authority. *E.g., Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024); *Planned Parenthood*, 122 F.4th 842–43. Rather, the Attorney General has *no* authority. He is thus not a proper *Ex parte Young* defendant.

**C.   The State Entities are not "persons" for purposes of 42 U.S.C. § 1983.**

All of Ms. Inama's federal law claims are brought under 42 U.S.C. § 1983. That statute creates a cause of action against every "person" who, under color of law deprives another of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *accord Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983.") (citation omitted). Thus, because neither the Board, Department, nor Attorney General are "persons" for purposes of 42 U.S.C. § 1983, no federal law claim may be maintained against them.

**D.   The Declaratory Judgment Act does not establish a cause of action.**

Ms. Inama's first four causes of action do not reference 42 U.S.C. § 1983 with respect to their alleged violations of the U.S. Constitution. Instead, they reference "Declaratory Judgment" and the counts seek declaratory and injunctive relief. But the Declaratory Judgment Act does not provide any cause of action—instead, the federal rights claims are based on the cause of action established in 42 U.S.C. § 1983. As the Ninth Circuit recounted a few years ago:

> The Declaratory Judgment Act does not provide a cause of action when a party, such as Reno, lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief. The availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." [Citations]. We agree with our sister circuits that have considered the issue that the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists. [Citations].

*City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (per curiam). Thus, Ms. Inama cannot bring causes of action under the Declaratory Judgment Act. Instead, because they allege violations of federal rights and seek declaratory relief, the causes of action are properly analyzed under 42 U.S.C. § 1983. And for the reasons above, Ms. Inama cannot maintain them against the State Entities here.

## II. The state law claims are barred by sovereign and Eleventh Amendment immunity.

Ms. Inama also has a number of pendent state law claims asserting violations of the Idaho Constitution.[1] The State Entities' sovereign and Eleventh Amendment immunity bar such claims; the State Entities have neither consented to suit in federal court nor waived their immunities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Accordingly, Ms. Inama's state law claims are barred and must be dismissed as against the State Entities.

## III. The Court should dismiss this suit with prejudice.

Given the well-established doctrines above, Ms. Inama's lawsuit must be dismissed. To put it bluntly, the claims against two state agencies and an elected constitutional officer with no connection to the enforcement of the statute are legally unsupportable. They are, thus, unreasonable, meritless, and frivolous. Such conduct would entitle the State Entities to attorney fees in having to defend against this suit, if they seek such fees. *See* 42 U.S.C.

---

[1] Additionally, the pendent claims should be dismissed because the federal law claim have been dismissed. 28 U.S.C. § 1367(c)(3); *see also Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367–68 (9th Cir. 1992) (The general rule is that "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed.") (citation omitted).

§ 1988. That issue can be addressed separately after the Court rules on the pending motion to dismiss.

The remaining question, however, is whether the Court should dismiss this lawsuit *with prejudice* as it pertains to the State Entities. This Court should. For the reasons set forth below, Ms. Inama's complaint "clear[ly]… could not be saved by any amendment." *Satanic Temple v. Labrador*, 149 F.4th 1047, 1054 (9th Cir. 2025) (alternations in original and quoting *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)). This is because even if Ms. Inama could name an appropriate party, her claims are still futile.

### A.  Idaho Code § 33-143 regulates government speech.

Ms. Inama, who was a public middle school teacher and is a teacher at some other public school now, is obviously a government employee. Her claims then focus on whether she can hang banners (posters) in the school's classroom in which she teaches, when the government does not wish her to hang those banners (posters). The answer to that question is that the government gets to control its government speech.

In the context of government employees and speech, the Supreme Court recently addressed the analysis that must apply. The analysis proceeds from one step to a second, but only if the first step clears—which it doesn't in this case.

> To account for the complexity associated with the interplay between free speech rights and government employment, this Court's decisions in *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968), *Garcetti,* 547 U.S. 410, 126 S. Ct. 1951, 164 L.Ed.2d 689, and related cases suggest proceeding in two steps. The first step involves a threshold inquiry into the nature of the speech at issue. If a public employee speaks "pursuant to [his or her] official duties," this Court has said the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of

speech is—for constitutional purposes at least—the government's own speech. *Id.,* at 421, 126 S. Ct. 1951.

At the same time and at the other end of the spectrum, when an employee "speaks as a citizen addressing a matter of public concern," our cases indicate that the First Amendment may be implicated and courts should proceed to a second step. *Id.,* at 423, 126 S. Ct. 1951. At this second step, our cases suggest that courts should attempt to engage in "a delicate balancing of the competing interests surrounding the speech and its consequences." *Ibid.* Among other things, courts at this second step have sometimes considered whether an employee's speech interests are outweighed by "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.,* at 417, 126 S. Ct. 1951 (quoting *Pickering,* 391 U.S. at 568, 88 S. Ct. 1731).

*Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 527–28, (2022).

The instant case is on all fours with the Ninth Circuit's *Johnson* decision which held that a high school math teacher who wanted to hang banners in his classroom would have engaged in government speech. There, the Ninth Circuit examined why the speech communicated through banners hung in Johnson's classroom "owe[d] its existence to Johnson's position as a teacher." *Johnson*, 658 F.3d at 970. Like Johnson, Ms. Inama "does not hold a unique or exotic government position." *See id.* at 967. She is a "teacher [who] performs the ordinary duties" of a teacher. *See id.*; *e.g.,* Dkt. 1 ¶ 12. She is not "mak[ing] [her] speech while performing a function not squarely within the scope of [her] position." *Johnson*, 658 F.3d at 967. Her position is instead to express herself through speech to the class in her classroom during class hours. Dkt. 1 ¶¶ 67, 69–70.

The Ninth Circuit in *Johnson* also set forth why speech through hanging banners in a public school "owes its existence" to the teacher's position as an employee—and is not like the speech of "an ordinary citizen." 658 F.3d at 967–68; *see also Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000) (concluding that speech communicated through a

public school's bulletin board was government speech). As the *Johnson* panel noted, "teachers do not cease acting as teachers each time the bell rings or the conversation moves beyond the narrow topic of curricular instruction." 658 F.3d at 967–68. This is "because of the position of trust and authority they hold and the impressionable young minds with which they interact." *Id.* at 968. Such factors separate teachers from ordinary citizens:

> An ordinary citizen could not have walked into Johnson's classroom and decorated the walls as he or she saw fit, anymore than an ordinary citizen could demand that students remain in their seats and listen to whatever idiosyncratic perspective or sectarian viewpoints he or she wished to share. *See Peloza,* 37 F.3d at 522–23; *Mayer,* 474 F.3d at 479–80; *Lee,* 484 F.3d at 695. Unlike Pickering, who wrote a letter to his local newspaper as any citizen might, 391 U.S. at 564, 88 S. Ct. 1731, or Givhan, who met with her school's principal, a fellow employee who willingly "opened his office door to" her speech, 439 U.S. at 415, 99 S. Ct. 693, Johnson took advantage of his position to press his particular views upon the impressionable and "captive" minds before him. *See Aguillard,* 482 U.S. at 583–84, 107 S. Ct. 2573; *Tucker,* 97 F.3d at 1213.

*Johnson*, 658 F.3d at 968.

Accordingly, as Idaho Code § 33-143 regulates government speech through what may be displayed "on public school property such as classrooms, hallways, entryways, or sports fields," this statute regulates government speech, which has no First Amendment protection.

Under the First Amendment, "[t]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny"), *Columbia Broadcasting Sys., Inc. v. Democratic Nat'l Comm.*, 412

U.S. 94, 139 n.7 (1973) (Stewart, J., concurring) ("Government is not restrained by the First Amendment from controlling its own expression")). "A government entity has the right to 'speak for itself.'" *Id.* (citation omitted). "It is entitled to say what it wishes, and to select the views that it wants to express." *Id.* at 467–68 (cleaned up).

### B. Ms. Inama's vagueness claims would fail.

Ms. Inama's initial complaint alleges a facial vagueness claim in the first cause of action and a vagueness claim as applied in the third cause of action. Neither claim could be saved through amendment.

*First*, as to the facial claim, "[v]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant." *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019) (citation omitted); *United States v. Rodriguez*, 360 F.3d 949, 953 ("Where, as here, a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face.") (quoting *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001)). As described above, Idaho Code § 33-143, which regulates non-First-Amend-ment-protected government speech, does not violate any First Amendment right. So no facial vagueness claim could be maintained. Additionally, because the statute is constitu-tionally applied to Ms. Inama, she "will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not be-fore the Court." *Kashem*, 941 F.3d at 375. (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).

*Second*, Ms. Inama has no standing to raise the vagueness of the statute as applied to her, because the statute applies to the school district, not to her, and regulates the government's speech. *See, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (setting forth general elements of standing). Ms. Inama's concern is about her own banners (posters)[2] that she wishes to display in the classroom. As explained above, the Ninth Circuit clearly held in *Johnson* that banners on classroom walls are government speech. That means only the governmental entity (the school district) has a right to put up classroom banners. Because the law only governs the school district's government speech, Ms. Inama cannot be heard to complain about the alleged vagueness of the law. Ms. Inama has no right to do so in her personal capacity. Because Ms. Inama only brings claims about her personal rights, this ends the vagueness analysis.

*Third,* if the Court were for some reason to conclude that Ms. Inama has the right to complain on behalf of the school district (she does not), the Court should also conclude the statute is not vague. The law, Idaho Code § 33-143, is a civil regulation of government speech. As such, the Court grants the civil regulation more leeway than a penal statute. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). The question a court considers is whether a statute is "so vague and indefinite as really to be no rule

---

[2] The statute specifically defines a banner to mean "a long, rectangular, or square piece of fabric, paper, or other material, often displayed in a vertical or horizontal manner, used to convey a message, symbol, emblem, or representation of an institution or a political, religious, or ideological expression, or used to announce or celebrate an event or achievement." Idaho Code § 33-143(5)(a). The posters at issue in this lawsuit qualify as "banners" because they are rectangular paper or other material, displayed in a vertical or horizontal manner, that are " used to convey a message, symbol, emblem, or representation of an institution or a political, religious, or ideological expression, or used to announce or celebrate an event or achievement." *Id.*; *see also* Dkt. 1 ¶¶ 64, 65.

or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123 (1967). To put it differently, the statute must be "substantially incomprehensible" to be vague; statutes that "alert the parties to the character of the proscribed conduct, and do[] amount to something more than 'no rule . . . at all'" survive a void-for-vagueness challenge. *Exxon Corp v. Busbee*, 644 F.2d 1030, 1033, 1034 (5th Cir. 1981).

In this case, Idaho Code § 33-143 more than simply alerts parties as to the character of the proscribed conduct; it details the proscribed conduct: "No flags or banners that represent political, religious, or ideological views, including but not limited to political parties, race, gender, sexual orientation, or political ideologies, may be displayed on public school property such as classrooms, hallways, entryways, or sports fields." Idaho Code § 33-143(2). Ms. Inama suggests the words "political" or "ideological" are vague. Dkt. 1 ¶ 186. But those terms are not generally vague. *See Broadrick*, 413 U.S. at 607–08 (holding that the Hatch Act, which prohibited, *inter alia*, "solicitation[s] of contributions 'for any . . . political purpose'" was not vague, and it was "all but frivolous to suggest" that it was); *see also ArchitectureArt, LLC v. City of San Diego*, 231 F. Supp. 3d 828, 841 (S.D. Cal. 2017) (considering a sign permitting ordinance that included "political or ideological signs" and concluding the ordinance was not vague).

In summary, Ms. Inama disagrees with the Legislature's policy decision to limit the use of public classroom walls owned by the government and used for government purposes to display banners approved by the government. That is a policy disagreement, not a constitutional claim. No amendment could save the vagueness claims.

### C. Ms. Inama's overbreadth claims would fail.

Ms. Inama also purports to bring in her initial complaint a facial overbreadth claim in the second cause of action and an "as applied" overbreadth claim in the fourth cause of action. But neither claim would succeed if amended because there is no such claim as an "as applied" overbreadth claim  and because overbreadth is a doctrine concerning a statute's reach to First Amendment protected speech, which the "government speech" at issue here is not.

*First*, there can be no "as applied" overbreadth claim. The overbreadth claim is a special type of First Amendment claim:

> An overbreadth challenge is unusual. For one thing, litigants typically lack standing to assert the constitutional rights of third parties. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 113 L.Ed.2d 411 (1991). For another, litigants mounting a facial challenge to a statute normally "must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987) (emphasis added). Breaking from both of these rules, the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied.

*United States v. Hansen*, 599 U.S. 762, 769 (2023). To put it differently, "[a]ll overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court." *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (Sotomayor, J.).

*Second*, the "[o]verbreadth doctrine permits the facial invalidation of laws that prohibit 'a substantial amount of constitutionally protected speech.'" *Pickup v. Brown*, 740 F.3d 1208, 1234 (9th Cir. 2014) (quoting *City of Houston v. Hill*, 482 U.S. 451, 466 (1987)).

But as described above, Idaho Code § 33-143 regulates government speech: the display of certain banners and flags in public school property in classrooms, hallways, entryways and sports fields. Because government speech is not protected by the First Amendment, *Pleasant Grove*, 555 U.S. at 467, Ms. Inama could not maintain any type of overbreadth claim.

*Third*, even if the Court were to consider the overbreadth claim, the claim would fail because the statute reaches government speech that occurs on public school property. *See Hansen*, 599 U.S. at 770 ("a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). The lawful sweep of Idaho Code § 33-143 far envelops any of the limited number of hypotheticals that Ms. Inama or her counsel might create. No amendment could save the overbreadth claims.

### D.   Ms. Inama's First Amendment claim against the Attorney General would fail.

In the fifth claim of her initial complaint, Ms. Inama complains about the speech made by the Attorney General. No amendment could save this claim. This claim seeks to penalize the Attorney General for his own comments on the "Everyone is Welcome Here" sign—yet the Attorney General's comments are protected by the Free Speech Clause of the First Amendment.

According to the Amended Complaint, the Attorney General "publicly ridiculed Ms. Inama" in his Op-Ed. Dkt. 1 ¶¶ 230–33. The Court can consider the Op-Ed as it is incorporated by reference in the complaint. *E.g., Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159–60 (9th Cir. 2012). The Op-Ed does not publicly ridicule Ms. Inama; it expresses the Attorney General's opinion as to the rainbow "Everyone is Welcome Here" sign.

Regardless, the Attorney General's statements are speech protected by the First Amendment. *Cf. 303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) ("the First Amendment protects an individual's right to speak his mind . . . .") (citations omitted). Simply because he is an elected public official does not mean that he, Attorney General Labrador, loses his free speech rights. *See Garcetti*, 547 U.S. at 417. Quite the opposite; he has his own free speech rights. *Wood v. Georgia*, 370 U.S. 375, 395 (1962) ("The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance."). And "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).[3] Accordingly, Ms. Inama could not amend her complaint to state a viable claim against the Attorney General for an alleged First Amendment violation.

That Ms. Inama could not hang the banners on the public school classroom walls, while the Attorney General can write an Op-Ed against such a banner, presents no contradiction. Ms. Inama wants to engage in government speech, but the government gets to say what that speech is. The Attorney General, on the other hand, is *the* elected official, and his writing the Op-Ed was well within *his* free speech rights.

---

[3] In her complaint, Ms. Inama accuses the Attorney General of making his public statements "in retaliation" to Ms. Inama continuing to hang her posters. Dkt. 1 ¶ 232. The Attorney General disagrees with Ms. Inama's characterization, but even taking it as true, *Nunez* holds that this is not a violation of the First Amendment. *Nunez*, 147 F.3d at 875.

### E.  Ms. Inama's state law claims cannot be saved.

Even setting aside the sovereign and Eleventh Amendment immunity issues with Ms. Inama's state law claims—that, to be clear, are not waived, and the State Entities assert them—the state law claims would still fail, even if brought in a court of competent jurisdiction.

In her seventh claim appearing in her initial complaint, Ms. Inama asserts that Idaho Code § 33-143 violates Article I, section 9 of the Idaho Constitution. But the Idaho Constitution provides "substantially similar" protections to the First Amendment, such that Ms. Inama's claims would be analyzed under the applicable federal law interpreting the First Amendment. *See In re Contempt of Wright*, 108 Idaho 418, 23, 700 P.2d 40, 45 (1985); *cf. Boren v. Gadwa*, ___ Idaho ___, 578 P.3d 861, 877 (2024) ("Nor are we persuaded that the Idaho Constitution provides greater constitutional protection for petitioning activity than the First Amendment."). Given the analysis above regarding government speech, Ms. Inama's state law claim regarding Article I, section 9, would fail.

Elsewhere in her initial complaint, Ms. Inama also references the right to free speech guaranteed by the Idaho Constitution. Dkt. 1 ¶¶ 197 (second cause of action), 218 (fourth cause of action). But just like the seventh cause of action, those claims fail because Idaho Code § 33-143 regulates government speech. She also references Idaho's due process clause. As with Idaho's free speech clause, the due process guarantee within the Idaho Constitution is also subject to the same analysis as the federal constitution. *Cf. Meisner v. Potlatch Corp.*, 131 Idaho 258, 262, 954 P.2d 676, 680 (1998). And thus Ms. Inama's

reference to the due process clause of the Idaho Constitution as part of her facial vagueness claim, Dkt. 1 ¶ 187, fails for the reasons set forth above.[4]

CONCLUSION

For the foregoing reasons, the Court should dismiss Ms. Inama's lawsuit against the Board of Education, Department of Education, and Attorney General, and dismiss this suit *with prejudice*.

DATED: February 26, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/ *Brian  V. Church*
BRIAN V. CHURCH
Lead Deputy Attorney General

*Attorney for Defendants Idaho Board of Education, Idaho Department of Education, and Attorney General Labrador*

---

[4] Neither the third nor the fifth causes of action reference the Idaho Constitution. *See* Dkt. 1 ¶ 207 (claiming the law is vague "on speech protected by the First Amendment"), ¶¶ 228, 229 (referencing the First Amendment). Even if they did, they would fail for the reasons articulated above.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Elijah M. Watkins
watkins.elijah@dorsey.com

James R. Stoll
jstoll@ajhlaw.com

Aaron R. Bell
bell.aaron@dorsey.com

Nicole M. Jenkins
njenkins@ajhlaw.com

Latonia Haney Keith
lhaney@post.harvard.edu

John J. Maas V
jmaas@ajhlaw.com

McKay Cunningham
cunninghammckay@gmail.com

*Attorneys for Plaintiff*

*Attorneys for Defendants West Ada School District, Dr. Derek Bub, and Monty Hyde*

 /s/ *Brian V. Church*
BRIAN V. CHURCH