James R. Stoll, ISB No. 7182
Nicole M. Jenkins, ISB No. 12191
John J. Maas V, ISB No. 12517
ANDERSON, JULIAN & HULL LLP
C.W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone:  208-344-5800
E-Mail:   jstoll@ajhlaw.com
          njenkins@ajhlaw.com
          jmaas@ajhlaw.com
          service@ajhlaw.com

*Attorneys for Defendants West Ada School District,
  Dr. Derek Bub, & Monty Hyde*

UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **SARAH INAMA**, an individual,<br><br>              Plaintiff,<br><br>vs.<br><br>**IDAHO STATE BOARD OF EDUCATION**, an agency of the State of Idaho; **IDAHO STATE DEPARTMENT OF EDUCATION**, an agency of the State of Idaho; **RAUL R. LABRADOR**, in his official capacity as the Attorney General of the State of Idaho; **WEST ADA SCHOOL DISTRICT**, a political subdivision; **DR. DEREK BUB**, in his official capacity as Superintendent of West Ada School District; **MONTY HYDE**, in his official capacity as the Principal of Lewis & Clark Middle School,<br><br>              Defendants. | Case No.  1:26-cv-00064-DCN<br><br>**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS** |

        **COME NOW**, defendants West Ada School District, Dr. Derek Bub, and Monty Hyde

(the "West Ada Defendants"), by and through their counsel of record, Anderson, Julian & Hull,

LLP, and hereby request this Court dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support thereof allege and states as follows:

## I.    INTRODUCTION

This case asks whether a public school teacher has a First Amendment right to choose the messages displayed on her government employer's walls — and to compel that employer to adopt her preferred framing of its own institutional values. The answer is no. West Ada School District has an official inclusion mission. It has an official speech policy. It has an elected school board accountable to its community. When West Ada determined that a commercially purchased poster depicting hands in varying skin tones had crossed from motivational into political — and asked one of its teachers to remove it — it was not suppressing private speech. It was doing what governments do: deciding what its own voice would and would not say. The First Amendment protects Ms. Inama's right to hold her views, express them outside the classroom, and advocate for change through the democratic process. It does not give her the right to conscript West Ada's walls into her cause. Based upon the arguments made in the State Entities' Motion, which is incorporated herein by this reference, and the argument made herein, the claims against the West Ada Defendants should be dismissed.

## II.    LEGAL STANDARD & STATEMENT OF WELL-PLEADED FACTS

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) when it fails to state a claim upon which relief can be granted. **See** *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **See** *id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009). While the court accepts all well-pleaded facts as true and construes them in the light most favorable to the plaintiff, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." **See** *id.* (quoting *Twombly*, 550 U.S. at 555). Nor is the court required to accept allegations contradicted by the complaint's own documents, exhibits, or other internal allegations. **See** *Sprewell v. Golden State Warriors*, 266 F.3d 979,988 (9th Cir. 2001).

This case must be dismissed because Plaintiff's own well-pleaded allegations fail to give rise to any cognizable claim against the West Ada Defendants. The following facts are drawn directly from the Complaint and accepted as true for the purposes of this Motion:

1.     West Ada School District is the largest school district in Idaho. (**See** Compl. ¶ 25.) Lewis & Clark Middle School is a West Ada school. (**See** Compl. ¶ 5.) At all times relevant to this action, Dr. Derek Bub served as Superintendent of West Ada and Monty Hyde served as Principal of Lewis & Clark Middle School. (**See** Compl. ¶¶ 6–7.) Both are sued exclusively in their official capacities as West Ada officers. (**See** Compl. ¶¶ 6–7.)

2.     Plaintiff Jennifer Inama was a middle school teacher who taught sixth-grade world studies at Lewis & Clark Middle school from 2019 to 2025. (**See** Compl. ¶¶ 12–13.) Within Lewis & Clark, she also served as the school's social studies department chair, teacher lead for sixth-grade teachers, and advisor to the school's National Junior Honor Society chapter. (**See** Compl. ¶¶ 19–21.)

3.     In or around 2021, Plaintiff purchased motivational posters from an arts and crafts store and hung two in her classroom: one reading "In this room, everyone is welcome, important, accepted, respected, encouraged, valued, equal" (the Equal Poster), and one reading "Everyone is Welcome Here" featuring raised hands in various skin tones (the Welcome Poster) (collectively, the "Posters"). (**See** Compl. ¶¶ 62–67.)

4.      In or around 2022, West Ada adopted Board Policy 0401 (the Speech Policy), which permitted teachers to display "motivational posters" but prohibited the display of "controversial issues" and the "advancement of individual beliefs," as decided by school administration. (**See** Compl. ¶ 75.) This was enforced by school-level administration, overseen by West Ada. (**See** Compl. ¶ 118.)

5.      To promote inclusion within Lewis & Clark, West Ada and Principal Hyde approved the "Explorer Way" — an official school mission statement directing teachers and students to "welcome others and embrace diversity." (**See** Compl. ¶¶ 59–61, 269.) The Explorer Way remained displayed throughout the school at all times relevant to this action. (**See** Compl. ¶ 272.)

6.      Between 2021 and 2024, West Ada evaluated Ms. Inama across multiple semesters, awarding her its highest rating for classroom environment and student management. (**See** Compl. ¶¶ 14–16.)

7.      Prior to the events giving rise to this litigation, no student, parent, teacher, or administrator suggested the Posters violated the Speech Policy. (**See** Compl. ¶¶ 68, 76.)

8.      On January 23, 2025, Representative Ted Hill introduced House Bill 41 (HB 41), proposed legislation that would prohibit "flags or banners" representing "political, religious, or ideological views, including but not limited to political parties, race, gender, sexual orientation, or political ideologies" from being displayed on public school property. (**See** Compl. ¶¶ 77, 79.) HB 41 was not law on that date. (**See** Compl. ¶ 78.)

9.      Following the introduction of HB 41 — proposed legislation that largely tracked West Ada's existing Speech Policy — West Ada undertook a review of its existing classroom displays for compliance with the Speech Policy. (**See** Compl. ¶¶ 77–78, 85.) On January 29, 2025,

Principal Hyde and Vice Principal Fisher conducted a walkthrough of Lewis & Clark. (**See** Compl. ¶¶ 84–85.) It was during that review that the Posters were identified as potentially inconsistent with the Speech Policy's prohibition on the display of "controversial issues" and the "advancement of individual beliefs." (**See** Compl. ¶ 75.)

10.    On February 3, 2025, Principal Hyde ordered Ms. Inama to remove the Posters immediately pursuant to the Speech Policy, explaining that the Posters "express an opinion that not everyone agrees with" and that the message "Everyone is Welcome Here" reflected a personal belief — not a content-neutral motivational message. (**See** Compl. ¶¶ 87–91.)

11.    On February 13, 2025, West Ada's Chief Academic Officer met with Ms. Inama and explained that "[p]olitical environments change" and that "the color of the hands is crossing the political boundary" of the Speech Policy. (**See** Compl. ¶ 107.) West Ada therefore determined the Posters needed to come down. (**See** Compl. ¶ 113.)

12.    Throughout every interaction with Ms. Inama, West Ada administrators consistently grounded the removal order in the Speech Policy. Superintendent Bub explained that the Speech Policy required a "neutral zone" and proposed that Ms. Inama replace the Posters with a district-approved sign conveying an inclusive message. (**See** Compl. ¶¶ 131, 137.) West Ada Trustee Binetti described the Speech Policy and removal order as "particularly germane" precisely because pending HB 41 would, if passed, prohibit "exactly the type of signage" the Speech Policy already addressed. (**See** Compl. ¶ 125.)

13.    After initially complying with the removal order, Plaintiff returned to her classroom on February 8, 2025, and rehung the Posters. (**See** Compl. ¶ 102.) In a written statement to administrators, Plaintiff explained she believed West Ada's enforcement of the Speech Policy was

"protecting racist sentiments" and that the District was "not only not opposed to racism affecting district policy but upholding it." (**See** Compl. ¶ 112.)

14.     On March 12, 2025, West Ada sent a letter to staff regarding compliance with the Speech Policy. (**See** Compl. ¶ 122.)

15.     On March 13, 2025, Governor Little signed HB 41 into law. (**See** Compl. ¶ 78.)

16.     West Ada offered Ms. Inama an alternative — a district-approved sign conveying an inclusive message. (**See** Compl. ¶ 137.) Ms. Inama refused, and on May 9, 2025, announced her resignation, explaining that she could not "align [her]self nor be complicit with the exclusionary views and decisions of the administration" and refused to remain at West Ada unless it changed its institutional position on how inclusion would be expressed in its classrooms. (**See** Compl. ¶ 148.) Ms. Inama was not terminated and was not formally disciplined. (**See** Compl. ¶ 147.)

17.     The Boise School District (BSD), Idaho's second largest district, responded to the same controversy by formally adopting the Welcome Poster as its own institutional message, issuing a district-wide memo announcing that displaying the Welcome Poster was consistent with BSD's legal and educational obligations. (**See** Compl. ¶¶ 165–168.) West Ada made a different institutional choice. (**See** Compl. ¶¶ 86–90.)

## III.  ARGUMENT

Plaintiff brings two claims against the West Ada Defendants: a First Amendment claim under 42 U.S.C. §1983 against West Ada, Superintended Bub, and Principal Hyde. (**See** Compl. ¶¶259-275.) She also brings a declaratory judgment claim that Idaho Code §33-143 is unconstitutional under the Idaho Constitution against all Defendants, including the West Ada

Defendants. (**See** Compl. ¶¶276-279.) Both claims fail as a matter of law as to the West Ada Defendants and must therefore be dismissed.

### A.    Superintendent Bub and Principal Hyde, Sued in Their Official Capacity, are Redundant Defendants.

Before addressing the merits, the West Ada Defendants ask this Court to dismiss this suit with respect to Superintendent Bub and Principal Hyde, who are being sued only in their official capacities as agents of the West Ada School District. Plaintiff has brought suit against Superintendent Bub "in his official capacity as Superintendent of West Ada School District" and Principal Hyde in "his official capacity as the Principal of Lewis & Clark Middle School," a West Ada school. (**See** Compl. ¶¶5-7.) Both are sued exclusively in their official capacities. (**See** *id.*)

The law is well settled that a § 1983 suit against a government official in his official capacity is, in all respects, a suit against the governmental entity the official represents. **See** ***Kentucky v. Graham***, 473 U.S. 159, 166 (1985). Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." **See** ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 690 n.55 (1978). Because such claims are legally identical to — and entirely subsumed within — a direct claim against the entity itself, the inclusion of the entities' officers add nothing to the litigation.

Accordingly, where both a municipal officer and the governmental entity are named defendants, and the officer is sued only in his official capacity, the Court may dismiss the officer as a redundant defendant. **See** ***Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't***, 533 F.3d 780, 799 (9th Cir. 2008). Courts in this district and throughout the Ninth Circuit routinely do so. **See, e.g.**, ***Brizzi v. Elmore Cnty., Idaho***, 2024 WL 170626, at *3 (D. Idaho Jan. 16, 2024); ***Hofschneider v. City of Vancouver***, 182 F. Supp. 3d 1145, 1150 (W.D. Wash. 2016); ***Luke v.***

*Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

West Ada is a named Defendant in this action. The claims against Superintendent Bub and Principal Hyde are legally indistinguishable from the claims against West Ada and serve no independent purpose. They should be dismissed, and the West Ada Defendants' liability, if any, should be assessed through the claims against West Ada alone.

**B.     Plaintiff has No First Amendment Right to Compel West Ada's Speech.**

Plaintiff's sixth cause of action alleges that the West Ada Defendants deprived Ms. Inama of "her rights under the First and Fourteenth Amendments to the Constitution" by ordering her to remove her Posters. (**See** Compl. ¶ 274.) The Free Speech Clause generally prohibits suppressing speech "because of its message," and "the Supreme Court has enforced that prohibition in the public-school setting." **See** *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022). Thus, the Free Speech Clause protects "teachers and students," neither of whom "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." **See** *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

But the schoolhouse gate swings both ways. The First Amendment does not give public school employees speech rights "so boundless that they may deliver any message to anyone anytime they wish." **See** *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 522 (2022). That is because teachers occupy a dual role: they are private citizens, but they are also "government employees paid in part to speak on the government's behalf and convey its intended message." **See** *id.* Put another way, "[e]xpression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." **See** *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 967 (9th Cir. 2011) (quoting *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir.

2007)); **see also** *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d

332, 339 (6th Cir. 2010). As the Seventh Circuit explained:

> The school system does not "regulate" teachers' speech as much as it *hires* that speech ….
>
> A teacher hired to lead a social-studies class can't use it as a platform for a revisionist perspective that Benedict Arnold wasn't really a traitor, when the approved program calls him one; a high-school teacher hired to explicate *Moby-Dick* in a literature class can't use *Cry, The Beloved County* instead, even if Paton's book better suits the instructor's style and point of view; a math teacher can't decide that calculus is more important than trigonometry and decide to let Hipparchus and Ptolemy slide in favor of Newton and Leibniz.

**See** *Mayer*, 474 F.3d at 479 (emphasis in original). The same principle applies here: Ms. Inama

cannot decide that her preferred poster better conveys the government's inclusion message than

the form the government chose to authorize.

Courts resolve the tension between teacher speech and the First Amendment through a two-

step inquiry drawn from *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Garcetti v.*

*Ceballos*, 547 U.S. 410 (2006). **See** *Kennedy*, 597 U.S. at 522. The first step is threshold and

dispositive: if a public employee speaks "pursuant to her official duties," the Free Speech Clause

"generally will not shield the individual from an employer's control and discipline because that

kind of speech is — for constitutional purposes — the government's own speech." **See** *id.* (quoting

*Garcetti*, 547 U.S. at 421). If, and only if, the employee clears that threshold do courts proceed to

*Pickering* balancing. **See** *id.*

The dispositive question is therefore this: did Ms. Inama speak through her Posters "as any

ordinary citizen might," such that the *Pickering* test applies and this Court's "inquiry continues"

— or did her speech owe "its existence to h[er] position as a teacher," such that she "spoke as a

public employee, not a citizen, and [this Court's] inquiry is at an end"? **See** *Johnson*, 658 F.3d at

966 (quoting *Garcetti*, 547 U.S. at 419). The answer is written throughout the Complaint.

1.    **The First Inquiry: Ms. Inama's Job Duties Encompassed the Speech at Issue.**

In determining whether a public school teacher's speech constitutes protected private expression or government speech not subject to the First Amendment, two inquiries are necessary. See **Johnson**, 658 F.3d at 966. The first is factual: the Court must determine the "scope and content of a plaintiff's job responsibilities" through a "practical" inquiry that does not "rely mechanically on formal or written job descriptions." **See id.** The second requires the Court to determine the "ultimate constitutional significance of those facts" as a matter of law. **See id.**

Regarding the first inquiry, there is no factual dispute. Ms. Inama "does not hold a unique or exotic government position." **See id.** at 967. As the Complaint alleges — and as set forth in the Statement of Facts above — she is a middle school world studies teacher who taught sixth-grade students at Lewis & Clark Middle School, a West Ada public school, from 2019 to 2025. (**See** Compl. ¶¶ 12–13.) She served as social studies department chair, teacher lead for sixth-grade teachers, and advisor to the School's National Junior Honor Society chapter — all school-level institutional roles within West Ada's educational mission. (**See** Compl. ¶¶ 19–21.) She was formally evaluated by West Ada administrators across multiple semesters, appointed to positions of institutional responsibility, and publicly recognized by her employer for the classroom environment she created. (**See** Compl. ¶¶ 14–23.)

Ms. Inama also did not make her speech "while performing a function not squarely within the scope of [her] position." **See id.** Creating an inclusive and welcoming classroom environment was not a personal pursuit she undertook on her own initiative — it was a core and formally evaluated component of her job. (**See** Compl. ¶¶ 14–16, 23.) West Ada evaluated her specifically on her ability to create "an environment of respect and rapport" and awarded her its highest rating for doing so. (**See** Compl. ¶¶ 14–15.) Administrators praised her for maintaining "students'

**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS - 10**

dignity" and fostering "an environment where all students feel valued." (**See** Compl. ¶ 16.) West Ada appointed her to positions of institutional leadership — department chair, teacher lead, Honor Society advisor — in direct recognition of her ability to perform that function. (**See** Compl. ¶¶ 19–21.) And the School honored her publicly on its official social media account for helping to "create a positive climate and culture for staff and students," recognizing that "[h]er efforts have a huge impact on our overall school environment." (**See** Compl. ¶ 23.) Creating a welcoming classroom was her job, as she alleges in her complaint. (**See** Compl. ¶¶ 264-66.)

Plaintiff was not running "errands for the school in a car adorned with" messages about inclusivity and diversity. **See** *id.* Rather, Ms. Inama "hung h[er] [Posters] pursuant to a long-standing [West Ada School District] policy, practice, and custom, of permitting teachers to decorate their classrooms subject to specific limitations and the satisfaction of the Principal or a District administrator." **See** *id.*; (**see** also Compl., ¶75.) West Ada adopted the Speech Policy in 2022, establishing district-wide what teachers across all 58 West Ada schools may and may not display — permitting "motivational posters" but prohibiting the display of "controversial issues" and the "advancement of individual beliefs." (**See** Compl. ¶ 75.) That policy was enforced by Superintendent Bub personally through regular classroom walkthroughs and by building-level administrators responsible for managing compliance at the school level. (**See** Compl. ¶¶ 116–118.) Principal Hyde and Vice Principal Fisher conducted a systematic room-by-room review of Lewis & Clark specifically to identify noncompliant displays. (**See** Compl. ¶ 85.) Ms. Inama's poster display did not occur in some personal or extracurricular capacity — it occurred on the government's walls, in the government's classroom, pursuant to the government's permissive display framework, subject at all times to the government's approval.

Two Ninth Circuit decisions confirm that these facts resolve the first inquiry against Ms. Inama. In ***Johnson v. Poway Unified School District***, 658 F.3d 954 (9th Cir. 2011), a high school math teacher hung two large banners in his classroom containing patriotic and religious phrases, including "In God We Trust" and "One Nation Under God." **See *id.*** at 958. The district ordered their removal. **See *id.*** The Ninth Circuit held that because the teacher displayed the banners in his government-assigned classroom, to government-compelled students, pursuant to a district policy permitting classroom decoration subject to administrative approval, the speech was the government's — not the teacher's. See *id.* At 966-67. The court held the teacher "spoke as a public employee, not a citizen," and that the First Amendment inquiry was therefore "at an end." **See *id.*** at 966. An ordinary citizen, the court observed, could not have walked into that classroom and decorated its walls as he saw fit — the teacher's access to the classroom and its captive audience existed only because the government employed him and assigned him there. **See *id.*** at 968.

***Downs v. Los Angeles Unified School District***, 228 F.3d 1003 (9th Cir. 2000), reached the same conclusion from a different angle. There, a teacher posted materials critical of gay and lesbian lifestyles in response to the district's official "Gay and Lesbian Awareness Month" display. **See *id.*** at 1006. The district ordered the materials removed. **See *id.*** at 1007-8. The Ninth Circuit held that the classroom walls were the government's forum for the government's message — not the teacher's. Because the school district was the speaker, "its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis." **See *id.*** at 1013. The court was direct: the fact that "the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist." **See *id.*** The district was entitled to remove the teacher's materials and restore its own chosen message, and the teacher had no First Amendment right to substitute his preferred content for the government's. **See *id.*** at 1013-15. A

contrary finding would permit a private individual to "be able to do what to the government what the government could not do to [him or her]: compel it to embrace a viewpoint." **See** *id.* at 1015.

Together, ***Johnson*** and ***Downs*** establish the governing principle: when a public school teacher displays materials on government walls, in a government classroom, to students the government compels to be there, the speech belongs to the government. The teacher's personal agreement or disagreement with the message is constitutionally irrelevant — what matters is who controls the medium, and in this case, it is an undisputed fact that Ms. Inama's classroom posters were controlled by West Ada, and subject to West Ada's Speech Policy.

> **2.      The Second Inquiry: Ms. Inama's Speech Owed Its Existence to Her Position as a Teacher.**

Regarding the second inquiry — "whether [Ms. Inama's] speech owes its existence to h[er] position, or whether [s]he spoke as any non-employee citizen could have" — "the answer is clear; [s]he spoke as an employee." **See** ***Johnson***, 658 F.3d at 967.

Certainly, Ms. Inama "did not act as a citizen when [s]he went to school and taught class, took attendance, supervised students, or regulated their comings-and-goings; [s]he acted as a teacher — a government employee." **See** *id.* Similarly, Ms. Inama did not act as a citizen when espousing her message of inclusivity and diversity in her classroom. The Posters themselves were, by Plaintiff's own admission, entirely consistent with and directed toward her official function. She concedes at Paragraph 71 that the Posters "serve no other purpose than to speak the motivational message that all students, regardless of background, are welcome to attend and receive a free, high-quality public education in Ms. Inama's classroom." (**See** Compl. ¶ 71.) That is not a description of private expression. That is a description of a government employee performing her officially assigned public function — delivering the government's message, in the government's classroom, to the government's students.

**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS - 13**

The Explorer Way allegations confirm it. Plaintiff pleads that Lewis & Clark officially adopted the Explorer Way as its institutional mission statement, that it instructs teachers and students to "welcome others and embrace diversity," and that her Posters were "in line with" that official message. (**See** Compl. ¶¶ 59–61, 66, 269.) She intends these allegations to establish consistency between her display and school values. What she actually establishes is that the inclusion message she claims to have been delivering was the government's message — not hers. The government created it, the government distributed it, and the government authorized one specific form of it. When Ms. Inama hung her personally selected craft store poster as an alternative vehicle for that same message, she was not exercising a private expressive right — she was substituting her own preferred medium for the government's chosen one. The government is entitled to reject that substitution. **See _Downs_**, 228 F.3d at 1013.

As explained by the **_Downs_** court, "[w]hen the government is formulating and conveying its message, 'it may take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted' by its individual messengers. **See _id._** at 1013-14. The court was direct: the fact that "the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist." **See _id._** The school was entitled to remove the teacher's materials and restore its own chosen message — and the teacher had no First Amendment right to substitute his preferred content for the government's. As the Court further explained:

> When a public [] school is the speaker, its control of its own speech is not subject to the constrains of constitutional safeguards and forum analysis, but istead is measured by practical considerations applicable to any individual's choice of how to convey oneself: among other things, contend, timing, and purpose.

**See _id._** at 113. Put another way, "when the State is the speaker, it may make content-based choices." **See _id._** (quoting **_Rosenberger_**, 515 U.S. at 828.)

**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS - 14**

Under this, both the School and the District determined that a commercially purchased poster depicting hands in varying skin tones framed its inclusion message in terms that were racial and therefore political — terms its board had decided did not accurately reflect the government's chosen message. Chief Myers said it directly: "the color of the hands is crossing the political boundary." (**See** Compl. ¶ 107.) Superintendent Bub confirmed it: "the words are fine but the graphics can be taken politically." (**See** Compl. ¶ 138.) West Ada's public statement said the same: while the phrase "Everyone is Welcome Here" was "broadly positive," the graphic depiction of multi-racial hands had "been associated over time with political entities and initiatives." (**See** Compl. ¶ 121.) These are not the statements of administrators engaged in viewpoint discrimination against a private speaker. They are the statements of a government employer making a considered, consistent, and constitutionally authorized judgment about how its own message will and will not be framed. That is not viewpoint discrimination.

Instead, West Ada, like the school district in ***Downs***, opened its mouth to speak — through the Explorer Way, through the Speech Policy, and through its administrators' consistent and documented enforcement of both. West Ada chose its message: welcome others and embrace diversity, expressed in the terms and form the District selected and authorized. Ms. Inama's Posters were not that message. They were her preferred version of it — a commercially purchased craft store poster depicting hands in varying skin tones that West Ada's administrators determined framed the District's inclusion message in racial and therefore political terms. (**See** Compl. ¶¶ 107, 121, 138.) West Ada was entitled to say: those are not our words, and that is not our voice. **See** ***Downs***, 228 F.3d at 1013. Were the Court to invoke the Constitution to protect Ms. Inama's ability to make her voice the voice of West Ada, it would be doing to the government exactly what the government cannot do to her — compelling it to embrace a viewpoint. **See** ***id.*** at 1015; **see also**

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573–74 (1995) ("[T]he fundamental rule of protection under the First Amendment [is] that a speaker has the autonomy to choose the content of his own message."). The First Amendment does not work that way. The government gets to choose what it says and how it says it. No individual teacher's disagreement with that choice represents a First Amendment violation.

The Boise School District's response to this controversy confirms the point. When BSD formally announced it would support teachers who chose to display the Welcome Poster, it was making a government speech decision — adopting the Welcome Poster as BSD's institutional message. (**See** Compl. ¶¶ 166–168.) That decision belongs to BSD. West Ada made a different institutional decision through its elected board, its administrators, and its adopted Speech Policy. Both are government speech decisions, and neither district is constitutionally compelled to adopt the other's choice. The First Amendment does not require government entities to harmonize their expressive choices, and it does not give individual teachers the right to conscript their employer into adopting another district's preferred message. If the Welcome Poster is BSD's speech when BSD adopts it — and the Complaint's own characterization of BSD's formal institutional announcement confirms that it is — then its absence from West Ada's walls is equally West Ada's speech. Ms. Inama cannot invoke one government entity's expressive choice to override another government entity's contrary decision. That is not a constitutional violation.

Plaintiff's own words in opposition to the District's viewpoint confirm that she understood this to be a dispute about institutional policy, not personal expression. On February 14, 2025, she told West Ada administrators that its decision to remove the Posters sent "a clear message" that the District was "not only not opposed to racism affecting district policy but upholding it." (**See** Compl. ¶ 112.) On May 9, 2025, she resigned because she could not "align [her]self nor be

complicit with the exclusionary views and decisions of the administration." (**See** Compl. ¶ 148.) These are not the words of a private citizen whose personal speech was suppressed. They are the words of a government employee who disagreed with her employer's institutional policy choices and ultimately chose to leave rather than implement them. Ms. Inama is not arguing that West Ada silenced her voice. She was arguing that West Ada's institutional voice — its decision about what its classroom walls would display — expressed the wrong values. Her disagreement with that choice, however deeply felt, is a political objection to an institutional policy decision. It is not a First Amendment injury.

Because Ms. Inama spoke as a government employee pursuant to her official duties, the threshold inquiry resolves against her, ***Pickering*** balancing is never reached, and Count Six must be dismissed.

### C.    Plaintiff's Declaratory Judgment Claim Against the West Ada Defendants Must Be Dismissed Because West Ada Never Enforced Idaho Code §33-143.

Plaintiff's seventh cause of action seeks a declaratory judgment that Idaho Code § 33-143 violates the Idaho Constitution. (**See** Compl. ¶¶ 276–279.) As against the West Ada Defendants, this claim fails at the threshold:  West Ada never enforced the Speech Law. Every material act West Ada took giving rise to Plaintiff's claims occurred before Idaho Code § 33-143 existed — and the one allegation purporting to connect West Ada's conduct to HB 41 is pled only on "information and belief" and is not a well-pleaded fact. (**See** Compl. ¶ 91.) A party cannot obtain a declaratory judgment against a defendant based on a statute that defendant never invoked.

### 1.    West Ada Enforced Its Own Speech Policy, Not the Speech Law.

The timeline of West Ada's conduct is dispositive. Principal Hyde ordered Ms. Inama to remove the Posters on February 3, 2025 — more than five weeks before Governor Little signed HB 41 into law on March 13, 2025. (**See** Compl. ¶¶ 86–90, 78.) West Ada's Chief Academic

Officer met with Ms. Inama on February 13, 2025 — still weeks before the Speech Law existed — and grounded the removal order squarely in the Speech Policy, explaining that "[p]olitical environments change" and that "the color of the hands is crossing the political boundary" of the Speech Policy. (**See** Compl. ¶ 107.) West Ada sent its compliance letter to staff on March 12, 2025 — the day before HB 41 was even signed. (**See** Compl. ¶ 122.) Superintendent Bub met with Ms. Inama on March 14, 2025 — the day after the Speech Law was signed — and explained the Speech Policy's "neutral zone" requirement, proposing that Ms. Inama replace the Posters with a West Ada-approved sign. (**See** Compl. ¶¶ 131, 137.) At no point did any West Ada administrator invoke Idaho Code § 33-143 as the basis for the removal order. The Speech Policy — adopted by West Ada's elected board in 2022, applied district-wide across 58 schools and 40,000 students, and enforced by Superintendent Bub personally — was the independent, preexisting, and sole legal authority West Ada invoked. (**See** Compl. ¶¶ 75, 116–118.)

Plaintiff's only allegation connecting West Ada's conduct to HB 41 is found at Paragraph 91, which pleads on "information and belief" that Principal Hyde required removal "not just pursuant to the Speech Policy, but also to preemptively ensure compliance with the recently-introduced HB 41." (**See** Compl. ¶ 91.) That allegation is pled entirely on "information and belief" — it is conclusory, unsupported by any direct factual allegation, and not a well-pleaded fact the Court is bound to accept. **See** *Ashcroft*, 556 U.S. at 678. Every direct, non-conclusory allegation in the Complaint tells the opposite story: West Ada acted pursuant to the Speech Policy, and the Speech Policy alone.

### 2.    The Speech Policy and the Speech Law Cover Essentially the Same Ground.

That West Ada enforced the Speech Policy rather than the Speech Law is not a technicality — it reflects the straightforward reality that the Speech Policy already addressed exactly the

**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS - 18**

conduct HB 41 was designed to regulate. The Speech Policy, adopted years before HB 41 was introduced, prohibits the display of "controversial issues" and the "advancement of individual beliefs" in West Ada classrooms. (**See** Compl. ¶ 75.) HB 41, when introduced, proposed to prohibit "flags or banners" representing "political, religious, or ideological views, including but not limited to political parties, race, gender, sexual orientation, or political ideologies" from public school property. (**See** Compl. ¶¶ 77, 79.) West Ada Trustee Binetti made the relationship between the two explicit:  the Speech Policy was "particularly germane" because pending HB 41 would, if passed, prohibit "exactly the type of signage" the Speech Policy already addressed. (**See** Compl. ¶ 125.)

This is precisely why West Ada undertook its systematic classroom review when HB 41 was introduced. The introduction of legislation that tracked West Ada's existing policy was a natural prompt for West Ada to ensure that its own longstanding policy was being consistently applied across its 58 schools. That is not enforcement of HB 41. That is an institutional response to pending legislation that reinforced what West Ada's board had already decided years earlier.

### 3. The Fact That the Posters Had Not Previously Been Flagged Does Not Undermine West Ada's Position

Plaintiff makes much of the fact that no one complained about the Posters for years before the removal order. (**See** Compl. ¶¶ 68, 76.) But the absence of prior complaints does not mean the Posters were compliant — it means no one had looked closely yet. And the reason West Ada looked closely in early 2025 is explained by West Ada's own administrators in Plaintiff's own Complaint:  political environments change. (**See** Compl. ¶ 107.) What is widely understood as a neutral motivational message in one political moment may carry unmistakable political valence in another. West Ada's Chief Academic Officer said exactly that: "Political environments change. What may not have had a political message in the past could be one now." (**See** *id.*) Superintendent Bub confirmed it: "the words are fine but the graphics can be taken politically." (**See** Compl.

¶ 138.) West Ada's public statement said the same: the graphic depiction of multi-racial hands had "been associated over time with political entities and initiatives" that rendered it no longer "content-neutral" as the Speech Policy required. (**<u>See</u>** Compl. ¶ 121.)

The introduction of HB 41 — legislation that tracked West Ada's existing Speech Policy and reflected a statewide legislative judgment that displays of this kind had become politically charged — was precisely the kind of development that prompted West Ada to take a closer look at whether its own longstanding policy was being consistently applied. That is not pretext. That is institutional governance. The Speech Policy had always prohibited the display of controversial issues and the advancement of individual beliefs. The political environment had changed in ways that made the Posters fall within that prohibition. West Ada acted accordingly — pursuant to its own policy, on its own authority, before the Speech Law existed. Plaintiff's declaratory judgment claim against West Ada is therefore not a challenge to anything West Ada did. It is a challenge to a statute West Ada never enforced, directed at a Defendant that is not the appropriate target of that claim. It must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the West Ada Defendants respectfully request that this Court dismiss all claims against them with prejudice. Plaintiff's First Amendment claim fails because the speech at issue was West Ada's — not hers — and the government is entitled to control its own voice. Her declaratory judgment claim fails because West Ada enforced its own longstanding Speech Policy, not the statute Plaintiff challenges, and every material act giving rise to her claims occurred before that statute existed. And her claims against Superintendent Bub and Principal Hyde fail independently because they are redundant of her claims against West Ada itself. What remains, once the constitutional claims are stripped away, is a sincere and deeply felt disagreement

between a teacher and her employer about how an institutional message should be expressed. That disagreement deserved — and received — vigorous public debate. It does not, however, state a claim under federal or state law upon which relief can be granted. These defendants therefore ask this case be so dismissed against them.

DATED this 27th day of February, 2026.

ANDERSON, JULIAN & HULL, LLP

By: _____
    James R. Stoll, Of the Firm
    Nicole M. Jenkins, Of the Firm
    John J. Maas V, Of the Firm
    Attorneys for Defendants West Ada School
    District, Dr. Derek Bub, & Monty Hyde

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of February, 2026, I served a true and correct copy of the foregoing document by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

Elijah M. Watkins
Aaron R. Bell
DORSEY & WHITNEY LLP
191 S. Capitol Blvd., Suite 1100
Boise, ID 83702
T: 208-617-2550
E: Watkins.Elijah@dorsey.com
    Bell.Aaron@dorsey.com
*Attorneys for Plaintiffs*

☐ U.S. Mail, postage prepaid
☐ E-Mail
☒ ECF

Latonia Haney Keith
McKay Cunningham
877 W. Main Street, Suite 503
Boise, ID 83702
T: 512-983-8000
E: lhaney@post.harvard.edu
    cunninghammckay@gmail.com
*Attorneys for Plaintiffs*

☐ U.S. Mail, postage prepaid
☐ E-Mail
☒ ECF

James E. M. Craig
Brian V. Church
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
T: 208-334-2400
E: james.craig@ag.idaho.gov
    brian.church@ag.idaho.gov
Attorneys for Defendants Idaho State
Board of Education, Idaho Department of
Education, and Attorney General
Labrador

☐ U.S. Mail, postage prepaid
☐ E-Mail
☒ ECF

_____
James R. Stoll
Nicole M. Jenkins
John J. Maas V

**DEFENDANT WEST ADA SCHOOL DISTRICT, DR. DEREK BUB, AND MONTY HYDE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND JOINDER OF THE STATE ENTITIES' MOTION TO DISMISS - 22**